FILED

AUG 27 2015

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| JOHRONNIE COTTON, AKA "J-RON," AND | ) | Case No.   4 - 1 5 - 7 1 1 0 2 |
| DAMIEN THOMAS, AKA "YOUNG," | ) | |
| | ) | OAKLAND VENUE |
| | ) | UNDER SEAL |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____August 14, 2015_____ in the county of _____Alameda_____ in the
_____Northern_____ District of _____California_____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(viii) | Possession with Intent to Distribute and Distribution of Methamphetamine |
| | Maximum Penalties:  See attached. |

This criminal complaint is based on these facts:

See attached AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

☑ Continued on the attached sheet.

APPROVED AS TO FORM:

*BSMartin*
AUSA BRIGID S. MARTIN

_____
*Complainant's signature*

Russell Johnson, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  8/27/15
_____

City and state:  _____Oakland, California_____

_____
*Judge's signature*

Hon. Donna M. Ryu
*Printed name and title*



PENALTY SHEET ATTACHMENT

21 U.S.C. §§ 841(a)(1) & (b)(1)(B)(viii) – Possession with Intent to Distribute
       Methamphetamine (50 grams or more)

|  |  | With 851 Prior |
|---|---|---|
| Minimum prison sentence | 5 years | 10 years |
| Maximum prison sentence | 40 years | Life |
| Maximum fine | $5,000,000 | $8,000,000 |
| Minimum supervised release term | 4 years | 8 years |
| Maximum supervised release term | Life | Life |
| Mandatory special assessment | $100 | No change |
| Mandatory and discretionary denial of federal benefits upon conviction of drug offenses (21 U.S.C. §§ 862 and 862a) | | No change |

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Russell Johnson, being duly sworn, hereby declare and state:

## I. INTRODUCTION

1. I am a Special Agent (SA) with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed since November 13, 2005. I am presently assigned to the ATF Oxford Field Office in Oxford, Mississippi, and working on assignment in Oakland, California, and surrounding area. I am a law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7). I was trained as an ATF Special Agent at the Federal Law Enforcement Training Center in Glynco, Georgia.

2. As an ATF Special Agent, I have participated in federal investigations involving the distribution of controlled substances as well as federal firearms violations. During these investigations, I have participated in various types of investigative techniques, to include electronic surveillance, undercover agents and informants, and controlled purchases of firearms and narcotics from suspects. I have participated in physical surveillance operations and have participated in the execution of federal arrest and search warrants. In addition to utilizing the aforementioned investigative techniques, I have been required during these investigations to analyze information resulting from traditional record searches, as well as reviewing previous case files.

3. This affidavit is made in support of criminal complaints and arrest warrants for Damien THOMAS, also known as "YOUNG" and Johronnie COTTON, also known as "J-RON", for violations of 21 U.S.C. § 841(a), possession with intent to distribute and distribution of methamphetamine.

4.      Because this affidavit is being submitted for the limited purpose of establishing probable cause for the arrest of THOMAS and COTTON, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to support the lawful arrest of THOMAS and COTTON. The statements contained in this affidavit are based on information provided to me by law enforcement officers as well as my training, experience, and knowledge of this investigation.

## II.      PROBABLE CAUSE

### A.      August 14, 2015 Methamphetamine Purchase from THOMAS, Supplied By COTTON

5.      On or about August 12, 2015, a confidential informant (CI-1)[1] working for the ATF met an unknown individual (UI) while riding the Amtrak train and mentioned to that UI that he/she was looking to buy some illegal narcotics. In response, the UI made a phone call to a friend and then invited CI-1 to come to the UI's friend's apartment. On the same date, the UI and CI-1 went to an apartment located in a building at 9239 Hillside Street, in Oakland, where the UI introduced CI-1 to THOMAS, nicknamed "Young." CI-1 asked THOMAS what illegal narcotics he sold. THOMAS told CI-1 that he charged $460 for an ounce of crystal methamphetamine and $1,000 for an ounce of crack cocaine. THOMAS gave CI-1 a cell phone contact number of (510) 689-6010.

6.      THOMAS's criminal history includes the following arrests, with convictions as noted: 1998 – Robbery, 1999 – Burglary, Take Vehicle without Owner Consent, Receive Stolen property, 2000 – Robbery, 2000 – Battery - Peace Officer/Emergency Personnel with Injury,

---

[1] CI-1 is a paid informant and has one felony conviction from 2004.

2002 -- Possess Marijuana for Sale, 2004 -- Battery Peace Officer/Emergency Personnel,

Obstruct/Resist Public Officer, 2005-- Battery- Spouse, Inflict Corporal Injury, 2006 --

Transport/Sell Control Substance (CONVICTION - 3 years prison, 5 years probation,

Possess/Purchase Cocaine Base for Sale, Possess Marijuana for Sale, 2006 - Battery with Serious

Bodily Injury, 2008 - Possess/Purchase Cocaine Base for Sale (CONVICTION- 16 months

prison, 3 years probation), 2008 – Carry Loaded Firearm in Public, Receive Stolen Property,

Possess Controlled Substance while Armed, Possess Control Substance, Probation Violence,

Felon in Possession of a Firearm (CONVICTION- 16 months prison), 2009 -- Possess Controlled

Substance, 2009 -- Parole Violation, Possess/Purchase for Sale Control Substance, Probation

Violation (3 years prison), 2010 -- Parole Violation, 2011- Possess/Purchase for Sale Control

Substance (2 years prison), 2013 -- Possess Controlled Substance, Carry Stolen Loaded Firearm,

Carry Concealed Weapon in Vehicle, Possess Controlled Substance while Armed, Carry

Concealed Weapon in Vehicle with Prior Felony Conviction, Carry Concealed Stolen Weapon,

2013 -- Felon in Possession of a Weapon (CONVICTION -- 5 years probation), 2014 -- Possess

Controlled Substance, 2014 -- Probation Violation.

7.      On or about August 13, 2015, CI-1 reported his/her meeting with THOMAS to ATF

agents.  On the same date, at the instruction of ATF agents, CI-1 then called THOMAS at the

cell number THOMAS provided.  During their phone call, THOMAS told CI-1 that he would

sell CI-1 two (2) ounces of methamphetamine the next day, August 14, 2015; THOMAS told CI-

1 the price would be $460 per ounce.

8.      On August 14, 2015, an Undercover Special Agent (UC-1), in the company of CI-1,

traveled to 9239 Hillside Street to meet with THOMAS.  Upon arriving and parking on Hillside

Street, CI-1 contacted THOMAS on his cell phone and told THOMAS that he/she was waiting

outside the apartment complex in a vehicle. After waiting approximately seven minutes, CI-1 again called THOMAS on his cell phone and told THOMAS that he/she was waiting for him. THOMAS replied, "It's all good, I'm about to walk out right now. I'm waiting for my boy to pull up anyway." This call was recorded. After an additional four minutes had elapsed, CI-1 attempted to contact THOMAS again on his cell phone but THOMAS did not answer. UC-1 and CI-1 then left the area.

9.      A short time later, CI-1 received a call on his cell phone from THOMAS. CI-1 asked THOMAS when his supplier would be arriving. THOMAS replied, "I know, I'm waiting on my nigger right now." THOMAS stated that his source was in the area. THOMAS told CI-1 that he was going to call his source and determine when he would be arriving. A short time after that call, THOMAS called CI-1 again. THOMAS asked CI-1 where he was, and CI-1 told THOMAS he/she was on his/her way back to THOMAS. CI-1 asked THOMAS where his source was. THOMAS responded, "He here, he here, already, but he only got one though." THOMAS explained that the source only wanted to sell one (1) ounce of methamphetamine, at this time, for fear of the presence of law enforcement. THOMAS stated that if it was up to him he would sell all the methamphetamine available. THOMAS further stated that the methamphetamine being offered for sale was of high quality. THOMAS advised that he had the source with him in order to ease the source's concerns. These two calls were recorded.

10.     UC-1 and CI-1 then traveled back to 9239 Hillside Street. Upon arriving and parking on Hillside Street, a red colored SUV left the parking lot of the apartment complex and turned in front of the UC's vehicle (UCV), headed in the direction the UCV had just come from. All of the windows on the UCV were rolled down at the time. UC-1 observed the driver of the SUV. The driver was later identified as Johronnie COTTON, nicknamed "J-Ron." THOMAS then

4

came up to the UCV and stood near the front passenger door, where CI-1 was seated.  The CI confirmed with THOMAS that COTTON was the source of the methamphetamine being offered for sale.  The UC exchanged greetings with THOMAS.  The UC observed THOMAS hand the CI a clear plastic bag containing one (1) ounce of suspected methamphetamine.  UC-1 then opened a hidden compartment in the UCV and asked CI-1 to put the methamphetamine in the compartment.  UC-1 then asked THOMAS, "How much?"  THOMAS replied, "Four-sixty."  UC-1 gave THOMAS $460 in U.S. currency to complete the transaction.  UC-1 and CI-1 shook hands with THOMAS and then left the area.  This transaction was audio and video recorded.

11.     An ATF Special Agent conducted a preliminary field test of the suspected methamphetamine which yielded a positive result for the presence of methamphetamine. The methamphetamine weighed approximately twenty-eight (28) grams.

**B.     Identification of COTTON as Driver of Red SUV on August 14, 2015**

12.     After the transaction with THOMAS, CI-1 told law enforcement that he/she had recognized the driver of the red SUV as someone CI-1 had previously met while with another ATF CI (CI-2)[2].  Immediately following the transaction with THOMAS, CI-1 called CI-2 and described the driver of the red SUV to CI-2, and CI-2 said he thought the person CI-1 had described was an individual he knew as "J-Ron," who law enforcement had identified as COTTON.

13.     CI-2 met "J-Ron" on or before August 11, 2015, and "J-Ron" told CI-2 that he could get illegal narcotics in the form of pills for CI-2.  "J-Ron" gave CI-2 cell number (510) 943-8356.

---

[2] CI-2 is a paid informant with multiple felony convictions.  CI-2 is on unsupervised probation following CI-2's most recent felony conviction in 2014.

ATF agents ran database queries and found that "Johronnie COTTON" was associated with that number. Agents then got a California DMV photo for COTTON and showed it to CI-2. CI-2 confirmed that COTTON was the individual he/she knew as "J-Ron."

14.     COTTON'S criminal history includes the following arrests, with convictions as noted: 1995 – Possess Controlled Substance while Armed, Possess/Purchase Cocaine Base for Sale (CONVICTION - 3 years probation), Possess Marijuana for Sale, 1995 – Possess/Purchase Cocaine Base for Sale, 1997 – Possess Marijuana for Sale, 2001- Obstructs/Resists Public Officer, 2002- Evade Peace Officer, 2002 – Take Vehicle without Owner Consent, Receive Stolen Property, Obstructs/Resists Public Officer, 2004 – Possess/Purchase Cocaine Base for Sale (CONVICTION - 1 year jail, 5 years probation), 2007 – Probation Violation, 2007- Posses Marijuana for Sale (CONVICTION- 5 years probation), 2010 -- Possess Marijuana for Sale, Assault with Deadly Weapon, Battery with Serious Bodily Injury, 2011-- Inflict Corporal Injury on Spouse/Cohabitant (CONVICTION - 2 years prison, 5 years probation), 2013 -- Parole Violation, 2014 -- Take Vehicle without Owner Consent, Possess Controlled Substance, 2015 -- Possess Controlled Substance.

15.     After the transaction with THOMAS, ATF agents showed UC-1 and CI-1 the DMV photo of COTTON. Both UC-1 and CI-1 identified COTTON as the same individual who they saw pulling away from THOMAS's residence in the red SUV when they arrived on August 14, 2015.

**C.     August 20, 2015 Methamphetamine Purchase from THOMAS**

16.     On or before August 17, 2015, CI-1 called THOMAS on his cell phone and arranged another methamphetamine deal. THOMAS agreed to sell CI-1 two (2) ounces of methamphetamine in exchange for $920.

17.     On or about August 17, 2015, UC-1 and CI-1 went to THOMAS' residence on Hillside

Street to buy the two ounces of methamphetamine, as previously arranged.   When UC-1 and CI-

1 arrived and parked on Hillside Street, CI-1 called THOMAS on his cell phone. CI-1 asked

THOMAS to come out to their vehicle.  THOMAS came out and approached the UCV.  CI-1

then got out of the UCV to meet with THOMAS.  THOMAS said that he was waiting for his

Mexican source to finish his workday.  CI-1 informed THOMAS that he/she and UC-1 were

traveling to Sacramento and could return to conduct the transaction on August 20, 2015.

THOMAS agreed to conduct the sale at that time.  This conversation was recorded.

18.     On August 20, 2015, UC-1 and CI-1 went to THOMAS's residence on Hillside Street to

complete the transaction as previously arranged.  Upon arriving and parking, CI-1 called

THOMAS on his cell phone and told THOMAS that he/she was outside waiting.  THOMAS

replied that he would be out shortly.


19.     After waiting a short period of time, UC-1 saw THOMAS walking toward the UCV from

the direction of the apartment complex.  THOMAS got in the UCV and sat in the back seat,

behind CI-1 in the front passenger seat.  UC-1 asked THOMAS, "You got it?"  In response,

THOMAS removed from his jacket pocket a clear plastic bag containing approximately two (2)

ounces of suspected methamphetamine.  THOMAS handed the bag to UC-1, who examined the

contents and handed the bag to CI-1 to place in the hidden compartment.  UC-1 confirmed with

THOMAS that the price for the methamphetamine was $920.  UC-1 then handed THOMAS

$920 in U.S. currency to complete the sale.  Prior to departing, UC-1 advised THOMAS that he

would contact him the following week concerning purchasing additional quantities of

methamphetamine.  This transaction was audio and video recorded.

20.     An ATF SA conducted a preliminary field test of the suspected methamphetamine which yielded a positive result for the presence of methamphetamine. The methamphetamine weighed approximately fifty-nine (59) grams.

### D.     August 20, 2015 Purchase of Methamphetamine from COTTON

21.     On or about August 19, 2015, CI-2 called COTTON at the cell phone number previously provided by COTTON.  During the call, COTTON agreed to sell CI-2 four ounces of methamphetamine.  COTTON told CI-2 that the price for four ounces would be $1,600.  They agreed that they would complete the transaction the next day, August 20, 2015.

22.     Prior to the August 20, 2015 transaction, other law enforcement agents conducting surveillance for the operation spotted COTTON in the area near where the transaction ultimately occurred with an unknown black male in the same red SUV COTTON was seen driving away from THOMAS's apartment complex on August 14, 2015.  Agents later confirmed this was the same red SUV via the California license plates; the tags matched.

23.     On August 20, 2015, an ATF Undercover Special Agent (UC-2) accompanied CI-2 to conduct the planned methamphetamine transaction with COTTON.  CI-2 called COTTON on his cell phone and CI-2 suggested they meet to conduct the transaction at the Walgreen's at 8102 International Boulevard in Oakland.  COTTON agreed.  When UC-2 and CI-2 arrived in the Walgreen's parking lot, COTTON called CI-2 from his cell phone and told CI-2 that COTTON was in the parking lot.  UC-2 and CI-2 then saw COTTON walking toward the UCV and CI-2 got out to greet COTTON.  CI-2 and COTTON then both got into the UCV – COTTON sitting in the front passenger seat, and CI-2 sitting in the rear passenger seat.  UC-2 remained in the driver's seat.  COTTON immediately retrieved a clear plastic bag containing a crystal-like substance, suspected to be methamphetamine, from his right pants pocket and handed it to CI-2.

8

CI-2 gestured to UC-2 that the contents of the bag seemed to be of good quality, and placed the bag in his/her sweatshirt pocket.

24.    UC-2 asked COTTON how much he wanted for the methamphetamine and COTTON replied, "Sixteen." UC-2 counted out and handed COTTON $1,600 of pre-recorded U.S. currency. COTTON took the money and counted it in front of UC-2. COTTON advised that he had been, "Holding this shit. I'm walking around, walking down the street," referring to being in possession of the methamphetamine while waiting for CI-2 to arrive to complete the transaction. COTTON then got out of the UCV, and UC-2 and CI-2 drove away. This transaction was audio and video recorded.

25.    An ATF SA conducted a preliminary field test of the suspected methamphetamine which yielded a positive result for the presence of methamphetamine. The methamphetamine weighed approximately 113 grams.

## III.    CONCLUSION

26.    Based on my training and experience, and the foregoing facts, I believe that probable

//

cause exists that Damien THOMAS, aka "YOUNG," and Johronnie COTTON, aka "J-RON,"

possessed with intent to distribute and distributed methamphetamine, in violation of 21 U.S.C. §

841(a)(1).

Under penalty of perjury, I swear that the foregoing is true and correct to the best of my

knowledge, information, and belief.


_____
Russell Johnson, Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives



SWORN BEFORE ME,
ON _____Aug. 27th_____, 2015.

_____
HONORABLE DONNA M. RYU
UNITED STATES MAGISTRATE JUDGE